[Crim. No. 259.   First Appellate District.—July 11, 1910.]

## THE PEOPLE, Respondent, v. THOMAS ELLIOT SAUNDERS, Appellant.

CRIMINAL LAW—ARSON—SUPPORT OF VERDICT.—It is held that the evidence is sufficient to sustain the verdict of conviction of the defendant of the crime of arson in the first degree as charged in the information.

ID.—GENERAL RULE AS TO REVIEW OF VERDICT—QUESTIONS OF LAW AND OF FACT.—In criminal cases, generally, this court can pass only upon questions of law, and it is only when there is an entire lack of evidence to support the verdict that a question of law is presented. If

the evidence bearing against the defendant, considered by itself, without regard to conflicting evidence, tends to support the verdict, the question ceases to be one of law, of which this court alone has jurisdiction, and becomes one of fact upon which the decision of the jury and of the trial court is final and conclusive.

ID.—CORPUS DELICTI—BURNING INSUFFICIENT—ADMISSION OF DEFENDANT—PROOF OF DISTINCT FIRES—ACCIDENT REBUTTED.—The mere proof of the burning of a building does not establish the *corpus delicti* of arson; and the admissions and statements of the defendant are not sufficient, of themselves, to justify a conviction without proof of the *corpus delicti.* But where the physical condition of the premises showed that three separate and distinct fires had been started, and it further appeared to be improbable that the fire was the result of accident, the *corpus delicti* of arson was sufficiently established.

ID.—ORDER OF PROOF—DEFENDANT'S ADMISSIONS—DISCRETION OF COURT.— The order of proof is in the discretion of the court. Though most of the admissions of defendant were proved subsequent to the proof of the *corpus delicti;* if any one or more of them were proved before that proof was made, that fact will not justify a reversal of the judgment.

ID.—EXPERT EVIDENCE STRICKEN OUT — SUBSEQUENT STATEMENT OF FACTS PROPERLY ADMITTED.—Where the expert evidence of the fire marshal as to three distinct fires, admitted over an objection, was stricken out, the court did not err in permitting him to state the facts observed by him which showed such distinct fires.

ID.—EVIDENCE—REMARK OF DEFENDANT TO POLICE OFFICER ARRESTING HIM—UNTENABLE OBJECTION—DEGRADING CHARACTER OF REMARK.— Where defendant was charged with burning part of a hospital from which he had been discharged, evidence of a remark made by him to the police officer arresting him speaking disparagingly of attaches of the hospital, and stating that he would get even with the hospital authorities, was not objectionable on the ground that it would tend to degrade him.

ID.—PRIVILEGED QUESTION CONFINED TO EXAMINATION OF WITNESS—REMARK TO OFFICER NOT PRIVILEGED.—It is only when the answer to a question asked of a witness would tend to degrade him that the answer is privileged. But where, as here, no question was asked of defendant as a witness, but the proof was confined to a voluntary statement made by him to the police officer, such statement was not privileged on that ground.

ID.—REMARK OF PROSECUTING ATTORNEY — "CHARACTER OF DEFENDANT BEING DEGRADED."—The remark of the prosecuting attorney where the evidence of the police officer was objected to as "tending to degrade the defendant," that "the character of the defendant is being degraded as we go along, that is our object," while it would better have been left unsaid, is of too trivial a nature to require

a reversal. What he was probably understood to mean was that the defendant was being degraded by the evidence tending to prove him guilty of the crime charged.

ID.—EXAMINATION OF WITNESSES BY COURT—PERTINENT QUESTIONS—ABSENCE OF LEANING AGAINST DEFENDANT.—The fact that the court took a prominent part in the examination of the witnesses does not indicate any misconduct on his part, where his questions were not only pertinent, but showed no leaning against the defendant.

ID.—NEWLY DISCOVERED EVIDENCE OF INSANITY WHEN CRIME WAS COMMITTED—DISCRETION OF COURT.—Where the defendant moved for a new trial on newly discovered evidence that he was insane at the time of the commission of the act charged, it cannot be said that the court abused its discretion in the matter of refusing continuances to secure such proof, or in denying the motion for a new trial.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. George H. Cabaniss, Judge.

The facts are stated in the opinion of the court.

Clarence G. Atwood, and Charles A. Strong, for Appellant.

U. S. Webb, Attorney General, for Respondent.

KERRIGAN, J.—The defendant was accused by information of the crime of arson of the first degree. He was tried and convicted as charged. He moved for a new trial, which was denied, and he was thereupon sentenced to imprisonment in the state prison for the term of twenty years. This appeal is prosecuted from the judgment and from the order denying defendant's motion for a new trial.

Defendant contends that the evidence is insufficient to support the verdict.

The record is long, but the facts, very briefly, are as follows: The defendant had been in the employ of the St. Luke's Hospital as a porter for about two weeks when, on November 16, 1909, being under the influence of liquor, and being moreover generally unsatisfactory to the management of the hospital, he was discharged by the matron. Although discharged at about 5 o'clock in the afternoon of that day and repeatedly requested thereafter to leave the premises, he did not do so, and was arrested and removed by police officers at about 12

o'clock that night. On the way to the police station he abused the doctors and nurses of the hospital, and told the officer in charge of the patrol wagon that he would "get even." The next day, upon being released from custody, he went back to the hospital, and after being ordered away he called at the offices of two of the San Francisco daily morning newspapers and endeavored to have them publish a statement that the dead were being robbed at St. Luke's Hospital. On the way to these offices he met Rev. Dr. Shields, head of one of the departments of the hospital, and said, "I am sorry to have to do it, but you will see it all in the papers in the morning." His story was refused publication. He returned to the hospital that evening at about 11:30. The police department was again appealed to, but police officers did not arrive at the hospital until somewhere between 1 and 2 o'clock, whereupon they searched the premises but did not find the defendant. At 3:45 A. M. of November 18, 1909, a fire occurred in the basement of that wing of the hospital called the Mills building, in which eighteen patients were at that time confined, who all, however, fortunately escaped unharmed. Defendant was seen by several witnesses both just before and just after the fire in the neighborhood of the hospital. Yet in a letter to one of the nurses, and in a statement to the fire marshal in the presence of several police officers, he denied that he was in that vicinity at either of those times. In his statement to the fire marshal he attempted to account for his whereabouts on the night of the 17th of November, but we think the jury were fully justified in disbelieving him. The condition of the basement of the Mills building shows that the fire in all probability was of incendiary origin.

We think the evidence is sufficient to sustain the verdict of the jury. In criminal cases this court can pass only upon questions of law, and it is only where there is in effect an entire lack of evidence to support a verdict that a question of law is presented. The rule is stated thus in *People* v. *Emerson,* 130 Cal. 563, [62 Pac. 1069] : If the evidence which bears against the defendant, considered by itself, and without regard to conflicting evidence, tends to support the verdict, the question ceases to be one of law—of which alone this court has jurisdiction—and becomes one of fact, upon which the decision of the jury and the trial court is final and conclusive.

It is true, as contended by defendant, that the mere proof of the destruction of a building by fire is not enough to establish the *corpus delicti,* and the defendant's extrajudicial statements and admissions are not sufficient of themselves to sustain a judgment of conviction for arson (*People* v. *Simonsen,* 107 Cal. 345, [40 Pac. 440]). But here the physical condition of the premises showed that three separate and distinct fires had been started; and this evidence, taken in connection with other evidence tending to show the improbability of the fire being the result of accident, was sufficient to show that the crime of arson had been committed.

The extrajudicial statements of the defendant were adduced after the *corpus delicti* was disclosed; and even if they had been admitted in evidence before the *corpus delicti* was established (as the defendant claims was the case), still no serious question would be presented. The usual order of proof would have been departed from; but the order of proof is in the discretion of the trial court, and while the *corpus delicti* is ordinarily the first point to which the evidence should be directed, nevertheless the admission in evidence of a declaration by the defendant before such proof is made will not warrant a reversal of the judgment (*People* v. *Jones,* 31 Cal. 567; *People* v. *Jones,* 123 Cal. 65, [55 Pac. 698]).

Fire Marshal Towe gave his opinion as an expert that there had originally been three different and separate set fires which had formed into a small conflagration. This testimony went in over the objection of the defendant, and later upon his motion it was stricken from the record, and the jury was instructed to disregard it. Subsequently the witness stated facts which showed that the fire had three different places of origin. The assertion of the defendant that the court's action in this regard was error is entirely without merit.

On the way to the police station on the occasion of his first arrest the defendant made a remark to the police officer in charge of the patrol wagon in disparagement of the women attaches of the hospital, and that he would get even with the hospital authorities. The question which elicited this testimony was objected to upon general grounds, and also for the reason that it would tend to degrade the defendant. The deputy district attorney in reply said, "The character of the defendant is being degraded as we go along, that is our ob-

ject.'' When the question was propounded the court was unable to anticipate the nature of the answer, and as no motion was made to strike it out, and part of the answer being admissible, the defendant cannot be heard to complain. Moreover, if the question called for competent and material testimony, it was no objection to it that it might tend to degrade the character of the defendant. It is only when the answer to a material question will tend to degrade the character of the witness, that he is excused from answering it (Code Civ. Proc., sec. 2065), and the question here was addressed to the police officer and not to the defendant.

Coming to the observation of the prosecuting officer, and conceding that it would have been better left unsaid, nevertheless it is too trivial a matter to be considered as a ground for reversal. Besides, what the district attorney meant, and what he was probably understood to mean, was that the defendant was being degraded by the evidence introduced tending to prove him guilty of the crime charged.

Defendant claims that ''throughout the case the court took a very prominent part in the examination of the witnesses,'' at times taking the witnesses ''out of the hands of the prosecuting attorney and conducting the examination.'' A reading of the record discloses that whenever the court examined witnesses the questions asked were not only pertinent but they showed no leaning against the defendant. Therefore there is no occasion here, as there was in the case of *People* v. *Bowers,* 79 Cal. 415, [21 Pac. 752], for criticising the conduct of the trial court.

The defendant moved for a new trial upon the ground that subsequent to the trial he had discovered evidence showing that he was insane at the time of the commission of the act charged. At the hearing of the motion five affidavits in support thereof were read and filed, whereupon defendant's counsel requested a continuance of the pronouncing of judgment to enable them to get affidavits from Denver concerning defendant's family record and of his confinement in an insane asylum in the state of Colorado. The court had granted several continuances of this matter, and refused this request, and also made its order denying the motion for a new trial. We cannot say that the court in either matter abused its discretion.

Having thus concluded that there is no error prejudicial to the defendant in the record, we deem it unnecessary to discuss the point made by the attorney general that no proper appeal has been perfected.

The judgment and order are affirmed.

Cooper, P. J., and Hall, J., concurred.